UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EVA Y. PEÑA,

Plaintiff

-v-

MACY'S INC., et al.,

Defendants.

22-CV-09435 (PMH)

**ORDER**

PHILIP M. HALPERN, United States District Judge:

Before the Court is Defendants' motion *in limine* which seeks (i) preclusion of (a) a settlement agreement between Macy's and the Office of the New York State Attorney General ("OAG"), (b) any investigation by the OAG leading to that settlement, (c) any reference to the case *Orellana v. Macy's Retail Holdings, Inc.*, No. 17-CV-05192, 2018 WL 3368716 (S.D.N.Y. Jul, 10, 2018) or the related New York state court litigation; (ii) preclusion of (a) the prior record of nonproductive detainment, (b) non-party Anthony Gordon's signed statement, and (c) Gordon's employment file; and (iii) a finding that Plaintiff has failed to establish a claim for spoliation sanctions.[1] (Doc. 58, "Def. Br."). Plaintiff filed her opposition on March 15, 2024, which attaches as exhibits the evidence that Defendants seek to preclude. (Doc. 65, "Pl. Br.").

For the following reasons, Defendants' motion *in limine* is GRANTED IN PART and DENIED IN PART.

[1] Defendants motion *in limine* initially included a fourth branch requesting that Plaintiff should be precluded from "introducing any evidence of pain and suffering, loss of enjoyment of life, and lost earnings at the damages phase of trial." (Def. Br. at 23). Defendants subsequently withdrew this branch of the motion *in limine*. (Doc. 64; Doc. 66; Doc. 68).

## I. OAG Settlement Agreements, OAG Investigations, and *Orellana* Litigation

### A. OAG Settlement Agreement

Plaintiff, by her itemization of exhibits to be offered at trial as set forth in the Joint Pretrial Order (Doc. 69-2), seeks to introduce a settlement agreement between Macy's and the OAG arising from allegations that Macy's discriminated against its African American and Hispanic customers by subjecting them to heightened surveillance and wrongful detention. (Doc. 65-2; Doc. 65-3). Defendants seek preclusion of this evidence on the grounds that it "has little or no probative value and risks misleading the jury, unfairly prejudicing Macy's, and because it is contrary to Fed. R. Evid. 403 and 408." (Def. Br. at 6). Plaintiff responds by arguing that the settlement agreement is admissible as "habit" evidence under Fed. R. Evid. 406. (Pl. at 6-8).

Federal Rule of Evidence 406 provides,

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Fed. R. Evid. 406. "In order to be admissible under this rule, however, the conduct at issue must constitute a regular response to a repeated specific situation." *McCarrick v. New York City Off-Track Betting Corp.*, No. 91-CV-05626, 1995 WL 261516, at *5 (S.D.N.Y. May 3, 1995). "While evidence of specific employer practices may constitute admissible habit evidence, evidence of an employer's overall policy of discrimination against several individuals under varying circumstances is not the sort of repeated conduct covered by Rule 406." *Id.* A party offering evidence of habit "must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Zubulake v. UBS Warburg LLC*, 382 F. Supp. 2d 536, 542 (S.D.N.Y. 2005). "It is only when examples offered to establish such a pattern of conduct or habit are numerous

enough to base an inference of systematic conduct, that examples are admissible." *Id.* Plaintiff, in opposition to Defendant's motion, has failed to carry her burden of establishing that the OAG settlement agreement establishes such a pattern of conduct that is numerous enough to base an inference of systematic conduct upon. Macy's does not admit in the settlement agreement that it had a policy of racial discrimination with respect to surveilling and detaining suspected shoplifters. Macy's denied that its policies violated any federal or state laws and the settlement agreement, as Plaintiff herself acknowledges, merely shows that Macy's agreed to "adopt and implement a number of measures to resolve all matters surrounding the OAG's foregoing lawsuit against them." (Pl. Br. at 7). The OAG settlement agreement is therefore not "habit" evidence under Fed. R. Evid. 406.

There is no indication that the settlement agreement involved Plaintiff or any of the Macy's employees named as Defendants to this lawsuit. The settlement agreement itself does not establish that Macy's ever had a policy of racial discrimination with respect to its surveillance and detention of suspected shoplifters. Under Fed. R. Evid. 403, the settlement agreement has no probative value, and because it concerns allegations of racial discrimination on the part of Macy's, carries a substantial risk of unfair prejudice to Defendants. Additionally, the settlement agreement raises "the specter of serious jury confusion due to the juxtaposition of that complex subject matter against the simple and common sense conclusion that [Macy's] would not settle serious charges of wrongdoing involving significant monetary penalties unless it had committed the alleged offense." *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 831 F. Supp. 2d 779, 784 (S.D.N.Y. 2011) (excluding a settlement agreement pursuant to Fed. R. Evid. 403).

The OAG settlement agreement is also inadmissible under Fed. R. Civ. P. 408, which prohibits settlement evidence "either to prove or disprove the validity or amount of a disputed

claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Civ. P. 408(a). Rule 408 applies to settlement agreements even "if they are offered against a party who was not a participant in the settlement discussions or agreement." *United States v. Am. Soc. of Composers, Authors & Publishers*, No. 13-CV-00095, 1989 WL 222654, at *9 (S.D.N.Y. Oct. 12, 1989), *aff'd sub nom. Am. Soc. of Composers, Authors & Publishers v. Showtime/The Movie Channel, Inc.*, 912 F.2d 563 (2d Cir. 1990). The Court must, when analyzing whether Rule 408 bars settlement evidence, "assess the degree of relevance and potential prejudice of the evidence in light of the particular circumstances of the case." *Id.* Plaintiff here seeks to use the OAG settlement agreement to show that Macy's engaged in a pattern or practice of racial discrimination in the past. That is precisely what Rule 408 seeks to protect against. *See S.E.C. v. Pentagon Cap. Mgmt. PLC*, No. 08-CV-03324, 2010 WL 985205, at *4 (S.D.N.Y. Mar. 17, 2010) ("Rule 408 exists to protect a party that settles one claim from having that settlement used against it to establish liability (or the extent of liability) of that same party in another lawsuit for the same claim."). Rule 408 prohibits Plaintiff from using the OAG settlement agreement to establish liability in this case.

Accordingly, Defendants' motion *in limine* to preclude Plaintiff from introducing the OAG settlement agreement is GRANTED.

**B. OAG Investigation**

Plaintiff, again by its itemization in the Joint Pretrial Order, also seeks to admit investigation by the OAG leading to its settlement with Macy's. (Doc. 65-3). Defendants, in arguing that the OAG investigation evidence should be precluded, press the same arguments they made with respect to the settlement agreement. (Def. Br. at 9-10). The OAG investigation evidence, like the settlement agreement, is not admissible under Fed. R. Civ. P. 406 as "habit" evidence. The OAG's investigation involved a review of "all the stops and detentions made by

[Macy's] Loss Prevention Employees at its New York State stores from October 2012 through October 2013." (Doc. 65-3 at 7). The investigation occurred long before the conduct at issue in this litigation, and there is no indication that the investigation involved any of the Macy's employees who interacted with Plaintiff. Under Fed. R. Evid. 403, the OAG investigation evidence, like the settlement agreement, has no probative value and carries a substantial risk of unfair prejudice to Macy's. *See Dent v. U.S. Tennis Ass'n, Inc.*, No. 08-CV-1533 RJD VVP, 2008 WL 2483288, at *3 (E.D.N.Y. June 17, 2008) ("In addition to being inadmissible as hearsay, unproved allegations of misconduct are not proof of anything. Thus, courts have stricken allegations in complaints referring to investigations of allegations of wrongdoing, even when conducted by governmental agencies."). The OAG investigation is also inadmissible under Fed. R. Evid. 408, as with the settlement agreement, because Plaintiff seeks to admit the evidence for the prohibited purpose of establishing liability. *See Pentagon Cap. Mgmt.*, 2010 WL 985205, at *4.

Accordingly, Defendants' motion *in limine* to preclude Plaintiff from introducing the OAG investigation is GRANTED.

### *C. Orellana* Litigation

Plaintiff seeks to introduce two cases involving the racial profiling of suspected shoplifters by Macy's: (i) *Orellana v. Macy's Retail Holdings, Inc.*, 53 Misc. 3d 622 (N.Y. Sup. Ct. 2016) ("*Orellana I*"); and (ii) *Orellana v. Macy's Retail Holdings, Inc.*, No. 17-CV-05192, 2018 WL 3368716 (S.D.N.Y. Jul, 10, 2018) ("*Orellana II*"). (Doc. 65-4; Doc. 65-5).[2] Defendant argues that

[2] The *Orellana* litigation began in the New York Supreme Court, New York County (Case No. 453060/2015) and was subsequently removed pursuant to the Class Action Fairness Act to the United States District Court for the Southern District of New York before Judge Buchwald. *See Orellana II*, 2018 WL 3368716, at *6 (S.D.N.Y. July 10, 2018) (describing the procedural history of the *Orellana* litigation).

these prior cases have no probative value, risk misleading the jury, and unfairly prejudice Macy's. (Def. Br. at 6).

In *Orellana I*, Macy's was enjoined from "demanding, requesting, collecting, receiving, or accepting any payments in connection with GOL § 11-105, from suspected shoplifters while they are detained under Macy's custody pursuant to GBL § 218." 53 Misc. 3d at 633. *Orellana*, unlike the instant litigation, did not involve claims of racial discrimination. *Id.* (asserting causes of action against [Macy's] for: (1) false imprisonment/arrest, (2) abuse of process, (3) assault/battery, (4) unjust enrichment, and (5) declaring New York's civil recovery statute under General Obligation Law § 11–105 void for vagueness under New York State Constitution Article I, § 6 and 42 U.S.C. § 1983."). Plaintiff, in opposition to Defendants' motion, does not explain how the *Orellana* litigation is connected to the instant case other than by vaguely arguing that the evidence will be offered "in further support of her claims for fabricated evidence and related legal claims." (Def. Br. at 12). Plaintiff has, in sum, failed to show that the *Orellana* litigation has probative value to her claim. Allegations that Macy's violated state law in an unrelated case carries the risk of both misleading the jury and unfairly prejudicing Defendants.

Accordingly, Defendants' motion *in limine* to preclude Plaintiff from introducing the *Orellana* litigation is GRANTED.

## II. Macy's Prior Record of Nonproductive Detainment, Non-Party Gordon's Sworn Statement, and Non-Party Gordon's Employment Record

### A. Record of Nonproductive Detainment

Plaintiff may seek to introduce evidence that Macy's, Defendant Newtown-Henry, and non-party witness Gordon, engaged in one instance of non-productive detainment in November 2019, where Macy's asset protection employees detained an individual who was not carrying any merchandise. (Doc. 65-6). This incident resulted in non-party witness Anthony Gordon

("Gordon") being suspended with pay. (*Id.*). Defendants argue that this evidence should be precluded under Fed. R. Evid. 404(b) and 608(b) because it is "irrelevant to and not probative of the isolated incident at issue in this case." (Def. Br. at 10). Plaintiff argues that she will seek to introduce the prior record of non-productive detainment as "Habit Evidence and in further support of her claims for Fabricated Evidence, in that these parties do in fact falsely accuse and fabricate evidence against innocent persons of theft." (Pl. Br. at 13).

The record of a prior non-productive detainment is not admissible as "habit" evidence under Rule 406. The record Plaintiff seeks to introduce involves a single incident where a suspected shoplifter was detained by Macy's personnel, which clearly cannot by itself show a "routine practice of an organization." Fed. R. Evid. 406. The record does not establish—nor does Plaintiff argue—that this particular detainment was Macy's "usual practice." *Carrion*, 549 F.3d at 586–87; *see also Corona v. Adriatic Italian Rest. & Pizzeria*, No. 08-CV-05399, 2010 WL 675700, at *1 (S.D.N.Y. Feb. 23, 2010) ("[A] party seeking to establish a practice has become its habit must show its practice was employed on occasions numerous enough to allow an inference to be drawn that its practice is systematic conduct."); *Hopkins v. Nat'l R.R. Passenger Corp.*, No. 08-CV-02965, 2016 WL 8711718, at *13, n.13 (E.D.N.Y. Apr. 29, 2016) ("A single episode is insufficient to show a habit."). Nor does the record of the prior detainment involve any allegation or suggestion that it was racially discriminatory in any way. Plaintiff has failed to show that the record of prior non-productive detainment is admissible as "habit" evidence pursuant to Fed. R. Evid. 406.

Nor is the prior record of non-productive detainment admissible under Rule 404(b). Plaintiff seeks to introduce the prior record of non-productive detainment to show that Gordon and Newton-Henry have falsely accused someone of shoplifting in the past, and that they acted in

accordance with their past conduct by falsely accusing Plaintiff of shoplifting. This is a plainly improper purpose that is prohibited under Fed. R. Evid. 404(b). Nor is this instance of non-productive detainment admissible under Fed. R. Evid. 608(b), as it does not involve dishonesty. *See United States v. Horsford,* 422 Fed.Appx. 29, 30 (2d Cir. 2011) ("[T]he CCRB report indicates that the underlying conduct involved no dishonesty. Therefore, the report could not have been probative of [police officer defendant's] truthfulness or untruthfulness.").

Accordingly, Defendants' motion *in limine* to preclude Plaintiff from introducing Macy's prior record of non-productive detainment is GRANTED.

**B. Gordon's Signed Statement and Employment Record**

Plaintiff also may seek to admit two documents relating to Gordon's theft of approximately $1,800 cash from a Macy's cash register: (i) a signed statement by Gordon describing the circumstances of the theft (Doc. 65-7); and (ii) a disciplinary report from Macy's stating that as a result of the theft, Gordon's employment with Macy's was terminated (Doc. 65-8). Defendants argue that the signed statement and employment record should be precluded under Fed. R. Evid. 404(b) and 608(b) because "any probative value to Gordon's statement and employment file are substantially outweighed by the unduly prejudicial inference that he behaved illegally or unethically in this case because of his malfeasance on other occasions." (Def. Br. at 12). Plaintiff argues that Gordon's statement and the disciplinary report are admissible as "habit" evidence under Fed. R. Evid. 406, "as it indicates that at least this alleged witness of the security staff exploited the weakness in Macy's own security system as the cash register was out of the camera's field of view." (Pl. Br. at 14-15). Plaintiff additionally seeks to offer this evidence to show that Gordon was "financially compromised" and that his motive of falsely arresting Plaintiff was to "shake her down for fees." (*Id.*).

The documentary evidence regarding non-party Gordon's theft of cash from the Macy's cash register is not admissible as "habit" evidence pursuant to Fed. R. Evid. 406 because it does not show Gordon's "regular response to a repeated specific situation." *Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 125 (2d Cir. 2016). The documents are regarding a single incident of theft and say nothing about Gordon's "usual practice" during his employment with Macy's. *Carrion v. Smith*, 549 F.3d 583, 586–87, 590 (2d Cir. 2008).

Nor is it admissible as character evidence under Fed. R. Evid. 404(b). Rule 404(b) permits evidence of a bad act to be offered for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b); *see also United States v. McCallum*, 584 F.3d 471, 474-75 (2d Cir. 2009). "The Court retains discretion, however, to exclude evidence that is more prejudicial than it is probative, under Rule 403, even if it would otherwise be admissible under Rule 404(b)." *Monroe v. Town of Haverstraw*, 639 F. Supp. 3d 459, 462 (S.D.N.Y. 2022) (citing *United States v. Quinones*, 511 F.3d 289, 308-11 (2d Cir. 2007)). Plaintiff argues that she intends to offer this evidence to show (i) that Gordon had knowledge of weaknesses of the Macy's security system and (ii) that Gordon was financially compromised and sought to falsely detain Plaintiff to "shake her down." (Pl. Br. at 14-15). Gordon's knowledge of the weaknesses of Macy's security system and his motive for detaining Plaintiff are proper purposes under Rule 404(b), but the inquiry does not end there. The Court must next analyze whether, under Rule 403, the evidence is more prejudicial than probative. Neither Gordon's knowledge of the Macy's security system nor his financial position are relevant to whether he had probable cause to detain Plaintiff, and on the other hand, the theft evidence is highly prejudicial.[3] *See United States v. Rosse*, 418 F.2d 38, 41 (2d Cir. 1969) (extrinsic evidence

[3] The timing of Gordon's theft from the Macy's cash register further reduces the probative value of this evidence. Gordon states in his signed statement that he "began stealing the cash from Macy's in October of

of a prior unrelated theft found to be "highly prejudicial as it created a suspicion about the defendant"). The documentary evidence is therefore inadmissible under Rule 403.

Defendants raise the issue of whether the theft evidence is admissible under Rule 608(b), which permits the admission of "specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness" on cross-examination. (Def. Br. at 12-13 (citing Fed. R. Evid. 608(b)). Gordon is being called as a witness both by Plaintiff and by Defendants in the parties' case-in-chief.[4] (Doc. 69-2). Plaintiff cannot attempt to elicit testimony concerning the theft to attack Gordon's character for truthfulness on direct examination. *See Montoya v. Sheldon*, No. 10-CV-00360, 2012 WL 5476882, at *8, n.3 (D.N.M. Oct. 31, 2012) ("The [c]ourt notes that [asking a witness about prior, unrelated untruthful statements] was improper for direct-examination under Rule 608, even though [the witness] is an adverse witness."); *see also* 28 Fed. Prac. & Proc. Evid. § 6119 (2d ed.) ("[T]he reasons for permitting the direct examiner to ask leading questions of adverse or hostile witnesses have nothing to do with the policies underlying Rule 608(b). In fact, those policies could be significantly undermined by permitting the direct examiner to introduce specific-instances evidence in this situation.").

While Plaintiff is precluded from offering Gordon's signed statement and the disciplinary report, Plaintiff is not precluded from asking Gordon about the circumstances of his termination from Macy's on cross-examination. The Second Circuit has "recognized that cross-examination is generally the proper mechanism by which to test an adverse witness's credibility, and the use of extrinsic evidence to further pursue questions posed on cross examinations is generally not

2019." (Doc. 65-7 at 1). The events giving rise to Plaintiff's claims occurred one month prior, on September 3, 2019. (Compl. ¶ 40). Evidence showing Gordon's knowledge of the weaknesses in Macy's security system or his financial condition from an incident that occurred one month *after* Plaintiff's detainment is simply not relevant to the claims at issue here.

[4] The Court's trial practice for witnesses called by both parties is to have the witness take the stand one time. Here, Plaintiff is calling Gordon as an adverse witness in her case-in-chief.

permitted." *United States v. Shoreline Motors*, 413 F. App'x 322, 329 (2d Cir. 2011) (citing United States v. Masino, 275 F.2d 129, 133 (2d Cir. 1960); United States v. Castillo, 181 F.3d 1129, 1133 (9th Cir.1999)); *see also* 28 Fed. Prac. & Proc. Evid. § 6119 2d ed.).

Accordingly, Defendants' motion *in limine* to preclude Plaintiff from introducing Gordon's signed statement and disciplinary record regarding his theft of $1,800 is GRANTED. However, Plaintiff will be permitted to cross-examine Gordon concerning the circumstances of his termination from Macy's.

## III. <u>Spoliation Sanctions</u>

Defendants suggest that Plaintiff may seek spoliation sanctions in the form of an adverse inference instruction arising from discarded notes and deleted texts by Defendant Newton-Henry and non-party Gordon. (Def. Br. at 13). Defendants argue that the Court "should refused to grant [P]laintiff the severe sanction of an adverse inference." (*Id.* at 23). Plaintiff argues that Defendant Newton-Henry admitted—during the NYPD disciplinary trial—that she failed to preserve text messages and a list of items allegedly removed by Plaintiff. (Pl. Br. at 16). Plaintiff further argues that non-party Gordon knew that Plaintiff's arrest was "disputed" and that he had an obligation to preserve related records but failed to do so. (*Id.*). Plaintiff argues that "the Court must fashion an appropriate remedy including an adverse inference instruction and other such relief as determined by the Court" as a sanction for Defendant Newton-Henry's and non-party Gordon's failure to preserve evidence. (*Id.* at 17).

A party seeking such sanctions has the burden of establishing "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would

support that claim or defense." *F.D.I.C. v. Horn*, No. 12-CV-05958, 2015 WL 1529824, at *3 (E.D.N.Y. Mar. 31, 2015) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002)); *see also Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 139-40 (2d Cir. 2023) ("the culpable state of mind for a spoliation claim need not be intentional or willful, and may be found where the spoliation occurred due to negligence").

Defendants have failed to establish that Plaintiff cannot meet this burden. It is true that Plaintiff has not established when the documents at issue were deleted or destroyed. Defendant Newton-Henry testified at the disciplinary trial that she does not recall when she deleted those items. (Doc. 65-1, "Disciplinary Trial Tr." at 56:14-58:20; 202:10-206:10). It follows therefore that Plaintiff has not established that Defendant Newton-Henry had an obligation to preserve the evidence at the time it was destroyed. Plaintiff furthermore offers no evidence that the records were destroyed by Newton-Henry with a culpable state of mind. Plaintiff makes no argument with respect to what evidence, if any, that non-party witness Gordon deleted or otherwise destroyed. The only argument that Plaintiff makes with respect to Gordon is that he "had an obligation to preserve the evidence" and failed to do so. (Pl. Br. at 16). Plaintiff does not adduce any facts which establish that Gordon deleted any evidence relevance to this litigation that would give rise to spoliation sanctions.

The Court will not, at this juncture, grant an adverse inference instruction relating to the spoliation of evidence. Plaintiff is not precluded from bringing a proper motion for spoliation sanctions at trial, subject to meeting the burden of proof required for such sanctions. Defendants' motion to preclude Plaintiff from seeking a spoliation sanction in the form of an adverse inference instruction is DENIED. Plaintiff may request an adverse inference instruction if a proper evidentiary showing is made at trial.

**CONCLUSION**

For the foregoing reasons, Defendants motion *in limine* is GRANTED IN PART and DENIED IN PART.

(1) Plaintiff is precluded from introducing the OAG settlement agreement, the OAG investigation leading to that settlement, and the *Orellana* litigation.

(2) Plaintiff is precluded from introducing Macy's prior record of non-productive detainment, non-party Gordon's signed statement regarding the theft of $1,800, and non-party Gordon's disciplinary report related to that theft. Plaintiff is not precluded from eliciting testimony on cross-examination from Gordon of the circumstances of his termination from Macy's.

(3) Plaintiff is not precluded from bringing a proper motion for spoliation sanctions at trial, if appropriate.

**SO ORDERED.**

Dated: White Plains, New York
April 26, 2024

PHILIP M. HALPERN
United States District Judge